**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **LETETIA CLAGGETT,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-2952** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OPINION GRANTING PLAINTIFF'S
ALTERNATIVE MOTION FOR REMAND**

Letetia Claggett ("Plaintiff") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 15) and Defendant's Motion for Summary Judgment (ECF No. 31).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1961, has a GED, and previously worked as a customer service manager.  R. at 19, 31-32.  Plaintiff applied for DIB on April 15, 2010, alleging disability beginning on November 20, 2008, due to a torn rotator cuff, ulnar neuropathy, ulnar neuritis, an ulnar collateral ligament tear of the right elbow, diabetes, asthma, and Hashimoto's disease.  R. at 13, 110-11, 140.  The Commissioner denied Plaintiff's application initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 43-44, 46-53.  On April 20, 2012, ALJ Eugene Bond held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 27-42.  On May 21, 2012, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of November 20, 2008, through the date of the decision.  R. at 10-26.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 7, 2013.  R. at 1-9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 7, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

# II

## Summary of Evidence

**A.      State Agency Consultants**

On June 30, 2010, a state agency consultant, Charles Friedman, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 405-12.  Dr. Friedman opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 406.  Because of Plaintiff's right arm, her reaching, handling, fingering, and feeling were limited.  R. at 408.  Plaintiff had no postural, visual, communicative, or environmental limitations.  R. at 407-09.  Dr. Friedman opined that the medical evidence of record supported a light RFC with manipulative limitations.[2]  R. at 412.

On January 10, 2011, G. Dale, Jr., Ed.D., a state agency consultant, evaluated on a psychiatric review technique form Plaintiff's mental impairment under paragraph B of Listing 12.04 relating to affective disorders.  R. at 628-41.  Dr. Dale opined that Plaintiff's recurrent major depressive disorder caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 631, 638.  Dr. Dale did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.04.  R. at 639.  Dr. Dale thus assessed Plaintiff's mental RFC (R. at 642-45) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (5) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited. R. at 642-43.  Dr. Dale's RFC assessment thus provided:

> [Plaintiff], amid problems with mood and pain should be able to remember, understand and follow simple instructions given what appears to be cognitive and functional sufficiency as indicated via the [consultative examination,] [mental status examination], [activities of daily living] and related data.  [Plaintiff] appears to have the capacity to maintain sustainability in concentration, persistence and pace at the moderate limitation level in terms of simple tasking and the following of simple instructions.  [Plaintiff] has concurrent ability to generally take care of her personal needs and navigate her social environment when she has to.

> Therefore, [consultative examination and activities of daily living] indicate the presence of a mental impairment.  From a psychiatric functional perspective, [Plaintiff] should be able to make adjustments required to perform some type of simple task related functions and activities.

R. at 644.

## B.   Plaintiff's Testimony

In his decision, the ALJ reviewed Plaintiff's allegations:

> [Plaintiff] alleges a right rotator cuff tear, ulnar neuritis and neuropathy, a right elbow tear, diabetes, asthma, Hashimoto's disease, back problems, and depression.  She states that these impairments result in difficulty lifting and carrying with her right hand, limited range of motion in her right shoulder and right elbow, difficulty using her right hand for fine manipulation and repetitive movements, poor concentration, focus, and memory because of pain and effects of medication, right shoulder pain that radiates to her back and neck, numbness and swelling in her right arm, fatigue, poor sleep because of pain, shortness of breath, and drowsiness caused by medication.

> . . . In a function report, [Plaintiff] stated that she can make coffee, prepare simple meals with assistance lifting groceries, do light exercises, run errands, watch television, visit with her sister, help care for a sister who has cerebral palsy,

care for her dog, dust, vacuum, clean the bathroom, do laundry, load and unload the dishwasher with assistance, cannot drive because of medications, shops for groceries, household supplies, and necessities with assistance lifting, and visits with friends and family members[.]

R. at 17; *see* R. at 31-36, 158-68.

## C.     VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience and the ability to do unskilled, sedentary[3] work with limited dominant hand usage could perform the jobs of unarmed security worker, finish machine operator, or quality-control worker that exist in significant numbers in the national and local economies.  R. at 38-39. This hypothetical individual, if limited to unskilled, light work with limited dominant hand usage, could perform the jobs of grading and sorting worker, inspector, or machine tender that also exist in significant numbers in the national and local economies.  R. at 39.  If the individual had limitations that limited performance to less than 80% of an employer's requirement, then that individual would not be capable of sustaining any full-time employment.  R. at 41.

## III

## Summary of ALJ's Decision

On May 21, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of November 20, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R.

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."   20 C.F.R.  § 404.1567(a). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* § 404.1568(a).

pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could

perform other work in the national economy. R. at 15-20. The ALJ thus found that she was not

disabled from November 20, 2008, through the date of the decision. R. at 20.

In so finding, the ALJ found that, with regard to her mental impairment, Plaintiff had

mild restriction in activities of daily living; mild difficulties in social functioning; moderate

difficulties with regard to concentration, persistence, or pace; and experienced no extended

episodes of decompensation. R. at 16. The ALJ further found that Plaintiff had the RFC "to

perform light work as defined in 20 CFR 404.1567(b) except she is limited to unskilled work and

can use her dominant hand more than 80% of the time." R. at 16-17. The ALJ considered

Plaintiff's credibility and found that her "medically determinable impairments could reasonably

be expected to cause the alleged symptoms; however, [her] statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above residual functional capacity assessment." R. at 17.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv),  404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.  *See Walls*, 296 F.3d at 290; 20 C.F.R.  §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[5] 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-11, ECF No. 15-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. She also contends that the ALJ erroneously relied on the testimony of the VE. *Id.* at 11-13. For the reasons stated below, the Court remands this matter for further proceedings.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted);

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

*see* 20 C.F.R. pt. 404, subpt. P, app. 1. In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.   [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.   Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2).   Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.   In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.*   Finally, "[*e*]*pisodes of decompensation* are exacerbations or

temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, in finding that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04, the ALJ found that, "[w]ith regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties." R. at 16. As noted above, the ALJ then found that Plaintiff had the RFC to perform unskilled, light work and that she could use her dominant hand more than 80% of the time. R. at 16-17. At the hearing, the ALJ's questions to the VE involved hypothetical individuals with Plaintiff's same age, education, and work experience who would be limited to performing unskilled and sedentary or light work with limited dominant hand usage. R. at 38-39. The ALJ's questions to the VE did not refer to Plaintiff's mental limitations, however. Plaintiff now asserts that the ALJ's hypothetical question to the VE did not reflect her RFC. Pl.'s Mem. Supp. Mot. Summ. J. 12, ECF No. 15-1. She maintains that the limitation in the ALJ's RFC assessment that she was

13

capable of using her dominant hand more than 80% of the time was not included in the hypothetical question to the VE. *Id.* Plaintiff further contends that the hypothetical question to the VE did not accurately reflect her limitations related to her asthma, depression, or lumbar disc disease with radiculopathy. *Id.*

"[A]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).   "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.*   Because the ALJ in this case did not explain why Plaintiff's moderate limitation in concentration, persistence, or pace did not translate into a limitation in her RFC, the Court remands this case for the ALJ to do so. *See id.* ("For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.").

The Court also notes that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 17.  An ALJ's failure to evaluate a claimant's credibility before analyzing the RFC, however, is harmful error and requires remand, unless the ALJ "properly analyzed credibility elsewhere." *Mascio*, 780 F.3d at 639.  Rather, an ALJ should compare a claimant's functional limitations from pain

and subjective complaints to the other evidence in the record, not to the claimant's RFC, and consider the claimant's pain as part of the ALJ's analysis of RFC.  *See id.*

In this regard, a claimant's daily living activities are considered when evaluating the intensity and persistence of his symptoms, including pain.  20 C.F.R. § 404.1529(c)(3)(i); *see Johnson*, 434 F.3d at 658; *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam). The "ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work," however. *Williams v. Colvin*, 1 F. Supp. 3d 480, 483 (E.D.N.C. 2014) (quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995)).  "To establish disability, [the claimant] need not prove that her pain precludes all productive activity and confines her to life in front of the television." *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996).

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [Plaintiff's] husband and other family members), and is not held to a minimum standard of performance, as [Plaintiff] would be by an employer.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (Posner, J.).

> Here, the ALJ noted Plaintiff's allegations that her impairments caused

> difficulty lifting and carrying with her right hand, limited range of motion in her right shoulder and right elbow, difficulty using her right hand for fine manipulation and repetitive movements, poor concentration, focus, and memory because of pain and effects of medication, right shoulder pain that radiates to her back and neck, numbness and swelling in her right arm, fatigue, poor sleep because of pain, shortness of breath, and drowsiness caused by medication.

R. at 17.  The ALJ found, however, that the record was not entirely consistent with Plaintiff's allegations of disabling symptoms because her reported daily living activities "indicate[d] an ability to perform work-related functions." R. at 17.  Her activities included dusting, vacuuming, cleaning the bathroom, washing laundry, loading the dishwasher, and grocery shopping (R. at 17,

162, 163).  *See supra* Part II.B.  However, "although the ALJ concluded that [Plaintiff] can perform certain functions, he said nothing about [Plaintiff's] ability to perform them for a full workday."  *Mascio*, 780 F.3d at 637.  Thus, remand is appropriate here "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."  *Id.* at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).  Because the Court remands this matter for further proceedings under the fourth sentence of 42 U.S.C. § 405(g), the Court need not address Plaintiff's other arguments.  *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342 n.3 (4th Cir. 2012).

# VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 31) is **DENIED**.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED**.  Plaintiff's alternative motion for remand (ECF No. 15) is **GRANTED**.  Because of inadequate analysis, Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: August 17, 2015                                  _____/s/_____

Thomas M. DiGirolamo
United States Magistrate Judge